Frank J. KUTILEK, Jr., M.D.; Frank J. Kutilek, III, D.O., Plaintiffs,

v.

Richard G. GANNON; K. William Bruner, Jr.; Marc R. Baraban, Defendants.

No. 90–1071–C.

United States District Court, D. Kansas.

May 30, 1991.

F.C. McMaster, McMaster and McMaster, Wichita, Kan., for plaintiffs.

Lawrence T. Buening, Jr., Topeka, Kan., for defendants.

Steven C. Day, Woodard, Blaylock, Hernandez, Pilgreen & Roth, Wichita, Kan., J. Steven Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kan., Kenneth E. Peirce, Reynolds, Peirce, Forker, Suter, and Rose, Hutchinson, Kan., for K. William Bruner, Jr.

John W. Campbell, Deputy Atty. Gen., Topeka, Kan., for Richard G. Gannon, Mark R. Baraban.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the individual motions to dismiss filed by the defendants. Plaintiffs are two Wichita physicians who were disciplined by the Kansas State Board of Healing Arts ("Board") for misleading advertising regarding a procedure known as exodermology. Plaintiffs bring this action alleging the defendants in connection with their duties to the Board denied the plaintiffs their right to due process and defamed them. Defendants move to dismiss the action on the basis that they are entitled to either absolute or qualified immunity from liability. Plaintiffs oppose the motions and request oral argument. As the court believes oral argument would not materially assist it in deciding the motions, the court denies the plaintiffs' request.

■ In deciding a motion to dismiss, the court must accept as true on their face the well-pleaded factual allegations of the complaint, and all reasonable inferences are made in favor of the plaintiffs. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). Allegations must be construed most favorably for the plaintiffs. *Huxall v. First State Bank*, 842 F.2d 249, 251 (10th Cir. 1988). Dismissal is appropriate only if it appears beyond a reasonable doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The sufficiency of the complaint is not assessed from whether the plaintiffs may ultimately prevail but from whether plaintiffs are entitled to present evidence in

support of their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989).

■ In ruling on a rule 12(b)(6) motion, the court may not consider material beyond the pleadings unless it is submitted or attached as part of the complaint. *Hal Roach Studios v. Richard Feiner and Co.*, 883 F.2d 1429, 1441 n. 18 (9th Cir.), *superseded*, 896 F.2d 1542 (9th Cir.1989). The defendants attached to their motions two exhibits—the Board's press release of February 11, 1989, and the Board's order of public censure issued February 24, 1989. The court may convert a motion to dismiss pursuant to Rule 12(b)(6) when either the movant or the claimant submits matters outside the pleadings. 5A Wright and Miller, *Federal Practice and Procedure* § 1366 at 486 (1990). If the court accepts the extraneous matters, the motion must be converted into one for summary judgment. *Torres v. First State Bank of Sierra County*, 550 F.2d 1255, 1257 (10th Cir. 1977). Upon conversion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). The court sees no need to consider the exhibits submitted by defendants and thereby convert the motions to dismiss into motions for summary judgment.

Defendant Richard G. Gannon is the executive director of the Board. Defendants William K. Bruner, Jr. and Marc R. Baraban are Topeka physicians who were retained by the Board as consultants to the disciplinary matter pending against the plaintiffs. In their practice, plaintiffs use the procedure of exodermology which tightens the skin and leaves some redness after an eight-day stay in a care facility. Plaintiffs received a subpoena demanding their presence in Topeka and their production of confidential patient records. On January 27, 1989, plaintiffs appeared before Gan-

non, Bruner, Baraban and others and provided information on exodermology. In response to another subpoena, the plaintiffs submitted additional photographs of patients and videotapes on the topic of exodermology.

On February 11, 1989, the Board met and decided to issue a public censure against the plaintiffs for the newspaper advertisements and brochures used by plaintiff in connection with their exodermology practice. On February 13, 1989, the Board told the plaintiffs by telephone of its decision to censure plaintiffs publicly for the claim that results from exodermology would be evident in "8 days." On February 15, 1989, Gannon as executive director of the Board issued a news release to the media indicating that the plaintiffs had been publicly censured for advertising with photographs of individuals who were not their patients. The Board issued its written order of public censure on February 24, 1989, for plaintiffs' use of false and misleading advertising. Plaintiffs allege the Board and its agents never contacted the plaintiffs' patients about the exodermology procedure or the accuracy of plaintiffs' advertising.

Plaintiffs sought judicial review of the Board's action. In the meantime, defendant Bruner wrote a letter to the Board dated April 11, 1989, stating his opinion as consultant based upon his review of the advertising materials and the interview of plaintiff Frank J. Kutilek, III, D.O. in Topeka. Dr. Bruner wrote:

As far as I am concerned the bottom line is that he has knowingly misled the public with deceptive advertising concerning primarily the rapidity with which beneficial results may be achieved and the length of expected recuperation period. The advertising materials that I have reviewed also seem misleading insofar as they seem to hold out (both by photos and text) a greater degree of cosmetic improvement than one would normally expect from a chemical peel ("exodermology") alone.[1]

Also after reviewing the advertising materials and interviewing the plaintiffs at the request of the Board, Dr. Baraban wrote the Board in a letter dated April 12, 1989, expressing his opinion as follows:

Based on my personal review of the photographs as well as my past experience with chemical peels, I believe that it is unrealistic to believe that the patients pictures presented in the advertisement are realistic. Specifically, following a chemical peel with Phenol, a treated patient will not have the appearance of those depicted in the photographs. Rather, at this early post operative stage, the skin will be quite red and at times excoriated. These photographs imply that the treated patient will have these types of results in "only 8 days".

Based on my experience in plastic and reconstructive surgery as well as my direct involvement with chemical peels, I believe that the pictures presented are deceptive to the public and do not truly represent a normal course of events.[2]

The Board and plaintiffs settled the matters by an agreement dated August 12, 1989, and the administrative and judicial proceedings were dismissed. The plaintiffs agreed that all photographs in their future advertisements would be of their own patients and that any references to elapsed time on the photographs would be verifiable.[3]

Plaintiff's complaint consists of four counts. In count I, plaintiff alleges defendant Gannon in his capacity as executive director to the Board violated plaintiffs' right to due process by causing the Board to issue its order of public censure and by issuing the press release. In counts II and III respectively, plaintiff alleges defendant Bruner and defendant Baraban acting jointly and in conspiracy with defendant Gannon violated plaintiffs' right to due process by causing the Board to issue the order and

1. A copy of Dr. Bruner's letter is attached to the plaintiffs' complaint.

2. A copy of Dr. Baraban's letter is also attached to the plaintiffs' complaint.

3. A copy of the parties' agreement is attached to the plaintiffs' complaint.

damaged plaintiffs by their oral and written statements on plaintiff, exodermology, and plaintiff's advertising of exodermology. In count IV, plaintiff alleges defendants intentionally and recklessly made false and defamatory statements about plaintiffs, exodermology and plaintiffs' advertising of exodermology, causing plaintiffs' substantial damages.

■ All defendants argue the case must be dismissed as they enjoy absolute quasi-judicial immunity by virtue of their functions with the Board. The Supreme Court has taken a cautious attitude towards granting claims of absolute immunity to public officials. *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988) ("Absolute immunity, however, is 'strong medicine, justified only when the danger of [officials' being] deflect[ed from the effective performance of their duties] is very great.' [*Forrester v. White*,] 792 F.2d [647,] 660 [ (7th Cir.1986) ] (Posner, J., dissenting)"). Nonetheless, the Court has recognized that there are some officials whose functions demand full immunity from liability for the performance of their official duties. Under the rationale that the judicial process must be free from harassment and intimidation, absolute immunity has been given to judges performing judicial acts within their jurisdiction, *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978); to prosecutors for activities "intimately associated with the judicial process" such as initiating and pursuing a criminal prosecution, *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976), and to witnesses for their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 341, 345–46, 103 S.Ct. 1108, 1118, 1120–21, 75 L.Ed.2d 96 (1983). The court has taken a "functional" approach to immunity issues focusing on the public official's duties and "functions" at issue and then evaluating the effect liability would have upon the performance of those "functions." *Forrester*, 484 U.S. at 224, 108 S.Ct. at 542. Consequently, the court in *Butz v. Economou*, 438 U.S. 478, 508, 515–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978), found that agency officials who perform "quasi-judicial" functions similar to those of judges or prosecutors are entitled to the same absolute immunity.

The Tenth Circuit recently explained the reason for absolute immunities in civil rights litigation:

> The rationale for according absolute immunity in the civil rights context is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation. Because the judicial system often resolves disputes that the parties cannot, the system portends conflict. Win or lose, a party may seek to litigate the constitutionality of circumstances which required him to endure a lawsuit or suffer defeat. Such suits by dissatisfied parties might target judges, *see Valdez v. City & County of Denver*, 878 F.2d 1285 (10th Cir.1989), prosecutors and witnesses. *Cf. Mitchell [v. Forsyth]*, 472 U.S. [511] at 523, 105 S.Ct. [2806] at 2813–14 [86 L.Ed.2d 411 (1985) ]. Though such suits might be satisfying personally for a plaintiff, they could jeopardize the judicial system's ability to function.

> Absolute immunity has its costs because those with valid claims against dishonest or malicious government officials are denied relief. (Citations omitted). Still, the Court has determined that the smooth functioning of the judicial system takes precedence over those meritorious claims which will be foreclosed by granting absolute immunity. Such claims may find partial resolution through other means, however. The opportunity for subsequent judicial review of decisions made by prosecutors and for subsequent appellate review of lower court decisions provides a check upon actions clothed with absolute immunity. (Citation omitted).

*Snell v. Tunnell*, 920 F.2d 673, 686–87 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). A judge must be able to decide controversies without considering personal repercussions, a prosecutor must be able to decide

which and how cases should be pursued without weighing the threat of later retaliatory litigation, and a witness must be free to testify without being deterred or influenced by the possibility of being sued later for his or her testimony. *Snell*, 920 F.2d at 687.

■ The functional approach to immunities requires the court to evaluate the particular duty being performed for its corresponding nexus to the judicial process. *Snell*, 920 F.2d at 687. "[I]mmunity attaches to particular official functions, not to particular offices." *Westfall v. Erwin*, 484 U.S. 292, 296 n. 3, 108 S.Ct. 580, 583 n. 3, 98 L.Ed.2d 619 (1988) (citations omitted). Courts have gleaned three questions from *Butz* to address in deciding whether a public official is entitled to quasi-judicial immunity: (a) Are the officials' functions similar to those involved in the judicial process?; (b) Are the officials' actions likely to result in damages lawsuits by disappointed participants?; and (c) Do sufficient safeguards otherwise exist to protect against unconstitutional conduct? *Bettencourt v. Bd. of Reg. in Medicine*, 904 F.2d 772 (1st Cir. 1990); *Horwitz v. Bd. of Med. Examiners of State of Colo.*, 822 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987).

■ The Kansas State Board of Healing Arts serves by statute a quasi-judicial role and its members perform judicial functions that entitle them to absolute immunity from damages in a 42 U.S.C. § 1983 suit. *Vakas v. Rodriquez*, 728 F.2d 1293, 1296 (10th Cir.), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984). Hoping to avoid the reach of the *Vakas* decision, the Kutileks have sued the executive director of the Board and two consulting physicians hired by the Board. The grant of absolute immunity to these defendants depends upon answering the above three "functional" questions.

■ Defendant Gannon argues the plaintiffs' suit accuses him of wrongful actions in connection with his investigation, prosecution and publication of a quasi-judicial action. Gannon likens his actions to that of a prosecutor. Plaintiffs contend Gannon is accused of far more than this, including conducting the investigatory process outside the presence of the plaintiffs, the making of misleading and inaccurate statements to the Board, and the issuing of press releases. Plaintiffs do not cite any authority for why these other actions are outside the scope of a prosecutor's typical duties.

The Tenth Circuit has held that absolute immunity does not cloak a prosecutor's performance of investigative functions. *Spielman v. Hildebrand*, 873 F.2d 1377, 1382 (10th Cir.1989). Distinguishing between administrative or investigative and advocacy roles is not easy, but the Tenth Circuit has looked to whether the functions are closely related to initiating and pursuing judicial proceedings so as to be called an advocacy function. *Id.* Gannon's conduct of the investigatory process in interviewing the plaintiffs, subpoenaing the plaintiffs' records and materials, and deciding whether to contact plaintiffs' patients or not, is simply his preparation of the case for presentation to the Board. See *Snell*, 920 F.2d at 693 (and cases cited therein); *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir.1984), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). Gannon was acting as an advocate in preparing and presenting the case to the Board. This is the critical factor for absolute prosecutorial immunity. *Snell*, 920 F.2d at 693.

Plaintiff does not allege Gannon acted outside his authority as executive director in issuing the news release.[4] In fact, the only reasonable inference to be drawn from the complaint is that Gannon was acting solely as an aide to the Board. Gannon merely carried out the Board's decree in having the order published. He should be

---

**4.** "[A] prosecutor's statements to the press have been consistently considered as a part of the prosecutor's administrative function, only entitling the prosecutor to qualified immunity." *England v. Hendricks*, 880 F.2d 281, 285 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). Consequently, Gannon cannot claim absolute immunity for the news release by saying he was acting as a prosecutor.

shielded by absolute immunity in fulfilling his executive director's duties by publishing the Board's quasi-judicial decree. See *Valdez v. City and County of Denver*, 878 F.2d 1285, 1287–89 (10th Cir.1989); cf. *Bettencourt v. Bd. of Reg. in Medicine*, 904 F.2d at 785; *Bass v. Attardi*, 868 F.2d 45, 50–51 (3rd Cir.1989).

■ Defendants Bruner and Baraban argue they were retained by the Board to render expert opinions after reviewing materials and other evidence. They liken their roles to witnesses in the judicial process. Plaintiffs contend Bruner and Baraban are not being sued for their roles as witnesses since they never testified at any hearing. Plaintiffs insist, instead, that these defendants, like Gannon, are being sued for conducting an investigation outside the presence of the plaintiffs, making misleading and inaccurate statements to the Board, and issuing press releases.

■ Agency personnel who present evidence in quasi-judicial proceedings function as witnesses and are entitled to absolute immunity in that role. *Horwitz v. Bd. of Med. Examiners of State of Colo.*, 822 F.2d at 1513–14. A court-appointed psychiatrist who conducts a competency examination and reports the findings to the court enjoys absolute immunity. *Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir.), *cert. denied*, 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987). Absolute immunity extends to an expert witness's pretrial activities taken in preparation for testimony. *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1244–45 (7th Cir.1990), *petition for cert. filed* (March 5, 1991). In explanation, the Seventh Circuit said:

> *Briscoe* holds that the presentation of testimony may not be the basis of liability, even if the witness deliberately misleads the court. It would be a hollow immunity if the aggrieved party could turn around and say, in effect: "True, your *delivery* of bad testimony is immunized, but preparing to deliver that testimony is not, so I can litigate the substance of your testimony." Substance is

exactly what *Briscoe* puts off limits. 919 F.2d at 1245.

Consultants and advisors to administrative boards have been protected from damage suits on the basis of absolute immunity. *Bettencourt*, 904 F.2d at 785; *Bass*, 868 F.2d at 50–51. Bruner and Baraban are entitled to absolute immunity for their actions in reviewing the evidence, interviewing the plaintiffs, and making statements to the Board.[5]

■ There exists a strong need for Board members, their administrative personnel and their retained expert witnesses to perform their respective roles in the Board's quasi-judicial function without harassment or intimidation. Safeguards exist in the Kansas Administrative Procedure Act, K.S.A. 77–501 *et seq.* and the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77–601 *et seq.* to protect against unconstitutional conduct. For instance, if the actions taken by the Board or its agents violated plaintiffs' due process rights, this matter would be an appropriate issue for judicial review. Defendants have sustained their burden of showing that their exemption from personal liability for their particular actions is justified by overriding considerations of public policy.

■ In the alternative, the court finds that defendants' motions to dismiss should be granted on the basis of their qualified immunity. Once the defense of qualified immunity is raised, the plaintiffs must "come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). Plaintiffs have not made any effort to meet their burden. They have not alleged whether a property interest, liberty interest or both were involved or even alleged how the actions taken by the defendants deprived them of those interests without due process of law.

---

5. Since plaintiffs do not allege in their complaint any involvement of these two defendants in the press release, the court need not address the availability of immunity for that action.

Plaintiffs have failed to "demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir. 1990). Plaintiffs have not formulated their right with such particularity that it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). If the plaintiffs fail to meet this initial burden, the defendant public officials are to be spared the expense and burden of further proceedings and judgment should be entered in their favor. *Dixon v. Richer,* 922 F.2d 1456, 1460 (10th Cir.1991).

IT IS THEREFORE ORDERED that the motions to dismiss brought by defendant Gannon (Dk. 10), defendant Baraban (Dk. 12) and defendant Brunner (Dk. 15) are granted.