21 F.3d 423
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Geraldine K. RICHTER, Plaintiff-Appellant,
v.
Hilary H. CONNOR; Karen W. Perrine; Karen T. McCaffrey;
Bernard L. Henderson, Jr.; Robert A. Nebiker; George W.
Wilbur; Gary E. Anderson; William Addison Hurst; Steven
M. Lunsford; Gerald O. Glenn; Faye Lemon; Carol R.
Russek; Lynne R. Fleming; Franklin J. Pepper; Read F.
McGehee, Jr.; Tony C. Butera; Catherine S. Casey; Gerald
J. Bechamps; Walton M. Belle; David W. Branch; Michael L.
Stutts; David E. Brown; Howard F. Faunce, III; Robert D.
Gilmer; Ross C. Hart; Leslie H. Vogt; Charles N. Van
Horn; Thomas A. Wash; Charles F. Lovell; Charles H.
Crowder, Jr., Defendants-Appellees.
 No. 93-1433.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1994.
Decided April 8, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CA-92-1697-A).
 Paul Stone Richter, Richter, Murphy & Finn, Washington, D.C., for appellant.
 Gregory E. Lucyk, Sr. Asst. Atty. Gen., Office of the Attorney General, Richmond Va., for appellees.
 On Brief: Stephen D. Rosenthal, Atty. Gen., John H. McLees, Asst. Atty. Gen., Office of the Attorney General, Richmond, Va., for appellees.
 E.D.Va.
 AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff/Appellant Geraldine K. Richter filed suit against thirty Virginia state officials seeking relief pursuant to 42 U.S.C. Sec. 1983 and under Virginia state law. The District Court granted summary judgment in favor of Defendants/Appellees and dismissed all claims with prejudice. We affirm on the federal claims but remand with instructions to dismiss the state law claims without prejudice.
 
 I.
 
 2
 On November 22, 1990, Richter, an orthopedic surgeon, was arrested for drunk driving. A search incident to the arrest revealed that Richter had four prescriptions for tranquilizers and pain relievers in her purse. Three of the prescriptions were for other individuals. Richter became extremely abusive to the officers and to personnel who later attempted to administer a breathalyzer test. She claimed that she could not be detained by the police because she was "on call" at Fairfax Hospital.[1] When she agreed to take a breathalyzer test, Richter's blood alcohol level measured 0.13 percent, in excess of the legal limit.
 
 
 3
 Richter, charged with DUI and prescription fraud, was acquitted on all charges. Her case gained national prominence because she successfully defended the DUI charge by convincing the judge that premenstrual syndrome, rather than excessive use of alcohol, caused her abusive and erratic behavior on the night of her arrest.
 
 
 4
 Richter's arrest prompted the Virginia Department of Health Professions to undertake an investigation concerning possible disciplinary action on her medical license. Based on the results of the investigation, administrative charges were filed, and the Virginia Board of Medicine scheduled a formal hearing on the charges. An injunction in state court to prevent the hearing from going forward was dissolved, and the Board held hearings on July 26 and August 19, 1991. Between the two hearing dates, Richter was indicted on additional charges of prescription fraud but was acquitted of the charges.
 
 
 5
 At the conclusion of the second day of the hearing, Richter signed a consent order disposing of the charges against her with a public reprimand. The consent order is a public record that Richter signed voluntarily and unconditionally. Reports interpreting the nature of the reprimand were distributed to organizations that maintain records on physician disciplinary actions, and two press releases and a Board publication contained information concerning the reprimand.
 
 
 6
 Richter, claiming that her constitutional rights were violated at all phases of the administrative proceedings, filed suit against thirty Virginia state officials, seventeen members of the Virginia Board of Medicine (the "Board Defendants");[2] nine staff members who assisted the Board Defendants (the "Staff Defendants"),[3] two attorneys with the Virginia Attorney General's Office (the "Attorney Defendants"),[4] and two investigators assigned to Richter's case (the "Investigator Defendants").[5]
 
 
 7
 Richter's complaint against the Investigator Defendants alleges that they fabricated evidence against her in an attempt to "get" her. According to Richter, the Investigator Defendants undertook this course of action at the direction of the Staff Defendants. The Attorney Defendants acted inappropriately, Richter charges, because both the prosecutor and the Board's legal counsel represented the Board in the collateral state proceeding to dissolve the injunction. She also claims that the Attorney Defendants improperly directed the actions of the Board during the hearing. Richter maintains the Board Defendants committed numerous procedural errors that marred the administrative hearing and that the Staff Defendants defamed her after the hearing was concluded. According to Richter, the Staff Defendants published misleading interpretations of the consent order and refused to include exculpatory evidence in the public file in her case.
 
 
 8
 The District Court granted summary judgment in favor of all Defendants, holding that the Board, Staff, and Attorney Defendants were entitled to absolute immunity.[6] The Investigator Defendants did not receive absolute immunity for their conduct of the investigation because their actions were not integral to the judicial process. They were, however, granted qualified immunity because Richter could not produce any evidence that they had, in fact, falsified their reports. The District Court then dismissed the state law claims with prejudice under United Mine Workers v. Gibbs, 383 U.S. 715 (1966). This appeal followed.
 
 II.
 A. The Investigator Defendants
 
 9
 On appeal, Richter does not challenge the District Court's determination that the Investigator Defendants are entitled to qualified immunity for any purported misconduct during the investigation, but she argues that the District Court erred in concluding that the evidence in the record did not create a factual dispute concerning the actual occurrence of a constitutional violation by the Investigator Defendants.
 
 
 10
 Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Nevertheless, even when "the acts alleged by the plaintiff do constitute a violation of clearly established rights, a defendant is entitled to summary judgment if the record does not create a genuine issue as to whether the defendant in fact committed those acts." Turner v. Dammon, 848 F.2d 440, 443 (4th Cir.1988) (citation omitted). The record in this case does not create a genuine issue as to whether the Investigator Defendants fabricated evidence against Richter.
 
 
 11
 Richter's primary claim of fabrication is premised on the fact that the arrest report does not mention that she was on call at Fairfax Hospital on the night of her DUI arrest, while the report to the Board states that she was on call. According to Richter, this is evidence that the Investigator Defendants fabricated evidence against her. As the District Court noted, the mere fact that one report is more detailed than the other does not show that the Investigator Defendants falsified evidence in an attempt to "get" Richter. Moreover, the statement of particulars detailing the administrative charges against Richter does not even mention the "on call" issue. JA 128-30 (Amended Statement of Particulars). Rather, the other evidence presented by the Investigator Defendants, including her abusive behavior during her arrest, her blood alcohol level of 0.13 percent, and possible prescription fraud, caused the initiation of administrative proceedings against Richter. As a result, whether or not Richter was on call on the night of her arrest is irrelevant, and any dispute regarding Richter's "on call" status is not a dispute of material fact.
 
 
 12
 Richter argues that the District Court ignored other evidence in the record showing that the Investigator Defendants falsified their reports, claiming that the reports omitted statements from individuals who stated that they never had seen Richter impaired by drugs or alcohol. The exclusion of general character references, however, does not support the inference that the Investigator Defendants fabricated evidence.
 
 
 13
 Richter also claims that the Investigator Defendants fabricated evidence of prescription fraud, but the record does not support this assertion. For example, Investigator Defendant Hurst's report indicates that Jean Bode, an individual whose name appeared on prescriptions in Richter's possession when she was arrested, had never received or used the medications. JA 155. Testimony at the hearing confirmed that the prescriptions in Bode's name were not for Bode. JA 231-35. In fact, two grand juries found sufficient evidence to issue indictments against Richter for prescription fraud. Thus, although Richter was acquitted of the criminal charges, the record simply does not support her claim that the Investigator Defendants falsified the reports to the Board. Because Richter cannot generate a factual dispute as to whether the Investigator Defendants violated her constitutional rights, the District Court's ruling will be affirmed.[7]
 
 B. Board, Staff, and Attorney Defendants
 
 14
 The District Court held that the Board, Staff, and Attorney Defendants were entitled to absolute immunity under Butz v. Economou, 437 U.S. 478 (1978), and its progeny. In Butz, the Supreme Court held that agency officials who perform quasi-judicial functions are entitled to absolute immunity from suit. Absent such immunity, the fear of subsequent litigation might hamper quasi-judicial officials in exercising their duties. Id. at 512, 514.
 
 
 15
 Quasi-judicial immunity, according to the Supreme Court, flows not from the title of the official whose conduct is at issue, but is a function of the nature of the official's duties. Id. at 512-14. Thus, a court must engage in a functional analysis of an official's conduct to determine whether it is quasi-judicial in nature, and whether absolute immunity attaches. Id. at 512; see also Imbler v. Pachtman, 424 U.S. 409 (1976) (prosecutor is absolutely immune for prosecution activities but not for administrative or investigative actions; functional analysis of conduct determines applicable immunity).
 
 
 16
 In applying the Butz decision, the lower courts have identified three criteria to determine if an official is entitled to absolute quasi-judicial immunity: (1) if the official's functions are similar to those of a judge, in that the official determines the law and the facts of the case; (2) if the official makes decisions sufficiently controversial that they are likely to foster suits for damages by disappointed parties; and (3) if sufficient procedural safeguards are in place to protect against constitutional deprivations. See, e.g., Bettencourt v. Board of Registration in Medicine, 904 F.2d 772, 783 (1st Cir.1990) (analyzing medical board member's immunity in light of these three considerations); Watts v. Burkhart, 978 F.2d 269, 278 (6th Cir.1992) (en banc ) (quoting Bettencourt for absolute immunity inquiry); Horowitz v. Board of Medical Examiners, 822 F.2d 1508, 1513 (10th Cir.) (using same three-step test to analyze absolute immunity), cert. denied, 484 U.S. 964 (1987); Kutilek v. Gannon, 766 F.Supp. 967, 972 (D. Kan.1991) (applying Bettencourt ).
 
 
 17
 The Court in Butz also held that officials who make the decision to initiate administrative proceedings, as well as those who present evidence on the record at an administrative hearing, perform functions analogous to that of a prosecutor, and as such, also are entitled to absolute immunity. These officials perform functions integral to the judicial process and must be free to perform their duties without the threat of civil damages. 438 U.S. at 515-16; accord, Buckley v. Fitzsimmons, --- U.S. ----, 113 S.Ct. 2606 (1993) (agency official is protected by absolute immunity for actions in preparation for initiating proceedings and during presentation of case); Burns v. Reed, 500 U.S. 478 (1991) (prosecutor is absolutely immune for eliciting misleading testimony at hearing).
 
 
 18
 Applying these standards to Richter's case, we conclude that summary judgment was properly entered on the federal claims.
 
 1. The Board Defendants
 
 19
 Richter argues that the District Court's analysis of the Board Defendants' immunity is flawed. First, she contends that the Board Defendants are not entitled to absolute quasi-judicial immunity because the procedural safeguards in place were inadequate to satisfy Butz. Second, she contends that some of the actions by the Board Defendants were not quasi-judicial, and therefore, not protected by absolute immunity.
 
 
 20
 Richter's first argument lacks merit. She concedes that the Board Defendants act in a judicial capacity and that their decisions are subject to sufficient controversy to create a risk of civil suit by disappointed parties, and she further concedes that Virginia law provides for procedural safeguards. See, e.g., Va.Code Ann. Secs. 54.1-2919 & 54.1-2920 (procedures for notice and hearing in physician disciplinary actions); Sec. 9-6.14, et seq. (Virginia Administrative Process Act, which includes procedures for judicial review of administrative decisions). Richter argues, however, that the Board Defendants' failure to adhere to such procedures abrogated their absolute immunity. This argument has been rejected by other courts because a quasi-judicial official does not lose immunity for committing procedural errors.
 
 
 21
 In Watts v. Burkhart, 978 F.2d 269 (6th Cir.1992) (en banc ), the plaintiff brought a claim against the Tennessee Medical Board alleging violations of due process and equal protection in a disciplinary hearing by detailing numerous procedural irregularities, including the Board's failure to compile a proper record and admission of testimony by witnesses not under oath. The Sixth Circuit rejected the claims, reasoning that procedural errors did not abrogate the officials' absolute immunity. "[A]s long as a judicial officer has jurisdiction over the subject matter before him, he 'is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.' " Id. at 277 (quoting Stump v. Sparkman, 435 U.S. 349 (1978)); see also Bettencourt, 904 F.2d at 783 (medical board members absolutely immune despite alleged procedural errors; appeal procedure provided remedy for violations at the hearing level); Horowitz, 822 F.2d at 1515 (medical board members absolutely immune notwithstanding alleged procedural errors in disciplinary hearing). Accordingly, the Board Defendants are absolutely immune for any purported misconduct during the course of Richter's disciplinary hearing.
 
 
 22
 Richter's second argument is that the Board Defendants improperly encroached on investigatory and prosecutorial functions. As noted above, however, absolute immunity prevents an aggrieved party from bringing an action against a quasi-judicial official even if the official fails to perform his duties properly. Richter is attempting to argue that absolute immunity should not apply because of the egregiousness of the officials' alleged misconduct, rather than recognizing that, as quasi-judicial officials, they are immune notwithstanding any purportedly inappropriate actions. Thus, even assuming that the Board Defendants somehow improperly interfered with investigatory and prosecutorial functions, this does not abrogate the Board Defendants' immunity.
 
 2. The Staff Defendants
 
 23
 Richter's claims against the Staff Defendants can be divided into four categories: (1) instructing the Investigator Defendants to fabricate evidence; (2) causing unwarranted charges to be brought against her on the basis of the falsified report; (3) engaging in misconduct during the course of the hearing; and (4) defaming Richter after the hearing.[8] Richter argues that the Staff Defendants are not entitled to absolute immunity for these actions.
 
 
 24
 As noted above, the record does not support Richter's claim that the Investigator Defendants falsified evidence against her. Thus, even assuming that the Staff Defendants instructed the Investigator Defendants to fabricate evidence, Richter's constitutional rights were not violated because the Investigator Defendants did not comply with those instructions. Because no constitutional deprivation occurred, Richter cannot maintain her claims against the Staff Defendants. Cf. Turner, 848 F.2d at 443 (if the plaintiff cannot demonstrate a factual dispute concerning the occurrence of a constitutional violation, qualified immunity protects government officials even if their conduct, had it occurred, would have violated a clearly established right).
 
 
 25
 This same reasoning is dispositive of Richter's claims that the Staff Defendants brought unwarranted charges against her. If the Investigator Defendants' reports were not false, the ensuing charges were not unwarranted, and the Staff Defendants cannot be liable. Moreover, as the Supreme Court explained in Butz, officials must be free to make the decision to initiate administrative proceedings free from fear of subsequent liability for damages. 438 U.S. at 515. Accordingly, even if the Staff Defendants had initiated unwarranted administrative proceedings against Richter, they would be immune from suit.
 
 
 26
 The third category of charges concerns the actions of the Staff Defendants during the hearing itself. During the hearing, the Staff Defendants were assisting the Board Defendants in their quasijudicial function. As a result, the Staff Defendants are entitled to absolute immunity for these actions. Bettencourt, 904 F.2d at 784-85; Kutilek, 766 F.Supp. at 973.
 
 
 27
 The last category of claims against the Staff Defendants concerns their conduct after the hearing. Richter contends that the Staff Defendants distributed false "interpretations" of the consent order stating that the reprimand was for unprofessional conduct. These "interpretations" appeared in the Board's publication entitled "Board Briefs" and in reports to the National Practitioner Data Bank ("NPDB") and the Federation of State Medical Boards, both of which maintain records of disciplinary actions against physicians. Moreover, Richter claims that press releases distributed by the Staff Defendants were false and defamatory. Richter further contends that the Staff Defendants improperly removed exculpatory information from the public file, thus rendering the public record of the case defamatory and inaccurate.
 
 
 28
 Richter's arguments concerning the interpretations of the consent order suffer from the same deficiency as her claims against the Investigator Defendants: she cannot support her assertion that the information was false. The consent order states only that it is a "reprimand"; the exact nature of the reprimand is unspecified. Thus, she argues, her reprimand was not for unprofessional conduct. A fair reading of the order, however, belies her contention.
 
 
 29
 With respect to the contents of the public file, the Staff Defendants are entitled to absolute immunity. Determining the contents of the file is a quasi-judicial function. Richter apparently recognizes that determining the contents of the Board's judicial file is a quasi-judicial action because at oral argument she attempted to draw a distinction between the "judicial" file and the "public" file. Richter contends that it is the "public" file that contains the defamatory material. We cannot conceive of a principled distinction between determining the contents of the "judicial" and "public" files that would justify application of absolute immunity to the former but only qualified immunity to the latter. The Board and its staff must be free to maintain the records of quasi-judicial administrative proceedings without the fear that inclusion or exclusion of information could result in civil suit. See Butz, 438 U.S. at 515-16 (one purpose of absolute immunity is to allow executive officials to perform their duties free from intimidation or harassment from civil suits).
 
 3. The Attorney Defendants
 
 30
 The Attorney Defendants are entitled to absolute immunity. Attorney Defendant Russek prosecuted the case on behalf of the Board and represented the Board in collateral proceedings. Attorney Defendant Fleming provided legal counsel to the Board.
 
 
 31
 Clearly, under Butz and its progeny, Russek is entitled to absolute immunity for her role as a prosecutor. She cannot be sued for any involvement in bringing the charges against Richter or for misconduct that may have occurred during the hearing. See, e.g., Butz, 438 U.S. at 516-17; Burns, 500 U.S. 478. With respect to Russek's alleged improper advice to the Board, Richter cannot support her case. The record reflects only that Russek represented the Board in a collateral proceeding, not that she improperly advised or directed the Board during Richter's hearing. JA 337-38.
 
 
 32
 Fleming also is entitled to absolute immunity as legal advisor to the Board because she was assisting the Board in its quasi-judicial capacity. See, e.g., Bettencourt, 904 F.2d at 785 (individuals acting as legal advisors to medical board are absolutely immune).
 
 
 33
 C. Dismissal of State Law Claims with Prejudice
 
 
 34
 The District Court dismissed Richter's state law claims with prejudice under United Mine Workers v. Gibbs, 383 U.S. 715 (1966).[9] The District Court did not rule on the merits of these claims, but rather, dismissed them for lack of subject matter jurisdiction upon dismissal of the federal claims. Thus, as Defendants/Appellees acknowledge, the dismissal should have been without prejudice. Therefore, we will remand the case to the District Court with instructions to modify its order accordingly.
 
 III.
 
 35
 For the reasons stated, the District Court's opinion will be affirmed with respect to Richter's claims pursuant to 42 U.S.C. Sec. 1983. We remand this case to the District Court with instructions to modify its order to reflect that the common law claims are dismissed without prejudice.
 
 
 36
 AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED
 
 
 
 [1]
 Richter later claimed that she did not make this statement and that she was not on call on the night in question
 
 
 [2]
 Defendants Franklin J. Pepper, Read F. McGehee, Jr., Tony C. Butera, Catherine S. Casey, Gerald J. Bechamps, Walton M. Belle, David W. Branch, Michael L. Stutts, David E. Brown, Howard F. Faunce, III, Robert D. Gilmer, Ross C. Hart, Leslie H. Vogt, Charles N. Van Horn, Thomas A. Wash, Charles F. Lovell, and Charles H. Crowder, Jr
 
 
 [3]
 Defendants Hilary H. Connor, Karen W. Perrine, Karen J. McCaffrey, Bernard L. Henderson, Jr., Robert A. Nebiker, George W. Wilbur, Gary E. Anderson, Gerald O. Glenn, and Faye Lemon
 
 
 [4]
 Attorney Defendant Carol R. Russek presented the case against Richter at the administrative hearing. Attorney Defendant Evelyn R. Fleming provided legal counsel to the Board during the hearing
 
 
 [5]
 Investigator Defendant Steven M. Lunsford is a Virginia State Trooper, and Investigator Defendant William Addison Hurst works for the Virginia Department of Health Professions
 
 
 [6]
 In granting summary judgment, the District Court implicitly denied a motion by Richter to strike Defendants' affidavits in support of the Motion for Summary Judgment. On appeal, Richter argues that the District Court's failure to issue an express ruling on her motion to strike was in error. Because we rule on this appeal without reference to the challenged affidavits, it is not necessary to consider whether the implicit denial of Richter's Motion to Strike Affidavits was correct
 
 
 [7]
 Richter also claims that the Investigator Defendants gave perjured testimony during the Board hearing. As witnesses, the Investigator Defendants are absolutely immune from civil suit for the purported false testimony. Burns v. Reed, 500 U.S. 478 (1991); Briscoe v. LaHue, 460 U.S. 325, 329 (1983)
 
 
 [8]
 Richter also attempts to assert this fourth category of claims against the Board and Attorney Defendants. A review of the Amended Complaint, however, reveals that the actions about which she complains were accomplished primarily by the Staff Defendants. See JA 87-91 (Amended Complaint, Counts 44-49). In any event, to the extent she avers that the Board or Attorney Defendants participated in conduct after the hearing in violation of her constitutional rights, her claims against them fail for the same reasons those against the Staff Defendants fail
 
 
 [9]
 This doctrine was recently codified at 28 U.S.C. Sec. 1367 (granting district courts "supplemental jurisdiction" over claims previously identified as ancillary and pendent)