**Adam OSTRZENSKI, M.D.**

v.

**Mark S. SEIGEL, M.D.**

**No. Civ.A. DKC 97–1823.**

United States District Court, D. Maryland.

April 9, 1998.

C. Alexander Hewes, Jr., Washington, DC, for plaintiff.

Thomas W. Keech, Carolyn Brennan Wescott, Asst. Attys. Gen., Baltimore, MD, for defendant.

## *MEMORANDUM OPINION*

CHASANOW, District Judge.

Plaintiff's Section 1983 and false-light claims are now before the Court on Defendant's motion to dismiss. After considering the submissions of the parties, the Court concludes that Defendant, in his individual capacity, is absolutely immune from Section 1983 liability. Moreover, the Court concludes that Plaintiff can state no set of facts that would establish his false-light claim. Accordingly, the Court grants Defendant's motion to dismiss. No hearing is deemed necessary, and the Court now rules pursuant to Local Rule 105.6.

*Background*

Plaintiff is a gynecological surgeon trained in various laparoscopic techniques. As of 1991, Plaintiff had staff privileges to practice at Holy Cross Hospital ("Holy Cross"). By a letter dated October 18, 1991, Holy Cross informed the Maryland Board of Physician Quality Assurance ("Board") that it had curtailed Plaintiff's privileges with respect to hysteroscopy, CO2 laser laparoscopy, CO2 lower reproductive track and pelviscopy.

Pursuant to its statutory power,[1] the Board referred Holy Cross' complaint regarding Plaintiff to the Medical and Chirurgical Faculty of Maryland ("Faculty") for advice on whether the Board should pursue a formal action against Plaintiff. *See generally* Md.Code Ann., Health Occ. § 14–401. In turn, the Faculty referred the matter to Defendant, a member of the Montgomery County Medical Society.

In February 1993, Defendant and Dr. Ronald Orleans visited Plaintiff's office to conduct a peer review of Plaintiff's medical practice. As part of the review, Defendant and Dr. Orleans selected and analyzed the files of ten patients. Based on their visit and their review of the patient files, Defendant and Dr. Orleans submitted a Practice Review Report ("the Report") to the Board on March 29, 1993. On June 7, 1994, the Board issued charges against Plaintiff based on the Report. Plaintiff objected to the charges on procedural grounds, and in early November 1994, the Board's Administrative Prosecutor recommended that the charges be dismissed. On August 29, 1995, they were.

Plaintiff alleges two counts against Defendant. First, Plaintiff claims that Defendant deprived him of his due process rights in violation of 42 U.S.C. § 1983. Second, Plaintiff claims that Defendant published false statements about him placing him in a "false light." Moreover, the Court finds that because Plaintiff made no mention of the Board, the Faculty or Defendant's official capacity in either the caption of his complaint or in the section describing the parties, Plaintiff sued Defendant only as an individual and not in his official capacity.

*12(b)(6) Standard*

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In so doing, the Court must consider all well-pled allegations in a complaint as true. *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Moreover, the Court is to construe all allegations liberally in favor of the plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). The Court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

*Section 1983*

■ Defendant correctly contends that his duties as a peer reviewer are quasi-judicial and therefore immune from Section 1983 liability. It is well established that judges and prosecutors are absolutely immune as individuals from liability under 42 U.S.C. § 1983 arising out of the exercise of their official functions. *Imbler v. Pachtman,* 424 U.S. 409, 418, 427, 96 S.Ct. 984, 989, 993, 47 L.Ed.2d 128 (1976). Indeed, the Supreme Court recently reaffirmed with regard to prosecutors that, "[w]e do not depart from our prior cases that have recognized that the prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate." *Kalina v. Fletcher,* —— U.S. ——, ——, 118 S.Ct. 502, 510, 139 L.Ed.2d 471 (1997) (citing to *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995–96, and *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615–16, 125 L.Ed.2d 209 (1993)).

---

1. The Board is empowered to investigate, upon the filing of a written and signed complaint, any alleged violation of the Maryland statute governing the licensing and supervision of physicians. Md.Code Ann., Health Occ. § 14–205(a)(2).

Moreover, other state officials who perform quasi-judicial functions are, by the same reasoning, also absolutely immune from Section 1983 liability. *See Butz v. Economou,* 438 U.S. 478, 512–14, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978); *Richter v. Connor,* 21 F.3d 423, 1994 WL 118011 at *3 (4th Cir. Apr.8, 1994).

 The Supreme Court has emphasized, however, that prosecutorial immunity does not attach to the office of prosecutor or to its occupant. Rather, prosecutors enjoy absolute immunity only to the extent they serve as advocate for the State. *Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615–16. Accordingly, "[a] prosecutor's administrative duties and those investigatory functions *that do not relate to an advocate's preparation for the initiation of a prosecution* or for judicial proceedings are not entitled to absolute immunity." *Id.* (emphasis added). This makes clear, however, that prosecutors are immune when conducting investigations in connection with the decision to initiate prosecution. Defendant's immunity, therefore, turns on whether Defendant's limited investigation of Plaintiff was sufficiently related to the Board's decision to initiate charges against Plaintiff. The Court concludes that it was.

 Plaintiff argues that because Defendant actually went and gathered information regarding Plaintiff's competence, Defendant is more like a prosecutor exercising investigatory powers and thus enjoys only qualified immunity. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615–16, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 493, 111 S.Ct. 1934, 1943, 114 L.Ed.2d 547 (1991). Plaintiff's analysis oversimplifies the caselaw. In drawing the line between prosecutor as advocate and prosecutor as investigator, the Supreme Court looked to what checks exist (other than the threat of civil liability) to limit prosecutorial abuses. The Court observed that a prosecutor who investigates a crime but chooses not to seek an indictment is not subject to the "important check" of the judicial process. *Id.* at 271, 113 S.Ct. 2606. The Court further explained:

> There is a difference between an advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.

*Id.* at 273, 113 S.Ct. 2606.

Likewise, there are differences between a prosecutor's investigation of a crime and Defendant's peer review of Plaintiff. Defendant did not have the unfettered authority to investigate any doctor he suspected of incompetency, and he did not investigate Plaintiff on his own initiative. But for Holy Cross' notice to the Board that it was curtailing Plaintiff's privileges, Defendant's investigation never would have occurred. Moreover, Defendant only assisted the Board in making its decision whether to seek charges—i.e., its decision to prosecute. In contrast, prosecutors or police officers are free to investigate *anyone* they legitimately suspect of criminal conduct but can later choose not to pursue arrest, indictment or prosecution.

Admittedly, a Maryland medical peer reviewer performs certain investigatory functions, but those functions are circumscribed and relate directly to the Board's decision whether to initiate formal charges. The peer reviewer, therefore, is more like a prosecutor reviewing evidence and questioning witnesses in the process of deciding whether to seek an indictment and thus enjoys absolute immunity from Section 1983 liability. *See Davis v. Grusemeyer,* 996 F.2d 617, 631–32 (3d Cir. 1993) (holding that persons employed to perform investigative work in support of prosecution of criminal action share in prosecutor's absolute immunity).

*False Light*

 In contrast to Defendant's absolute immunity from Section 1983 liability, Defendant's immunity from Plaintiff's false-light claim is determined by the Maryland Code, which provides that:

> A person who acts without malice and is a member of the Board or a legally authorized agent of the Board, is not civilly liable for investigating, prosecuting, participating in a hearing under § 14–405 of the Health Occupations Article, or otherwise

acting on an allegation of a ground for Board action made to the Board or the faculty.

Md.Code Ann., Cts. & Jud. Proc. § 5–715 (Michie 1997) (formerly Cts. & Jud. Proc. § 5–392). Since Plaintiff does not dispute that Defendant was a legally authorized agent of the Board, Defendant's immunity turns on whether Plaintiff has adequately pled that Defendant acted maliciously.

The Court is not aware of any Maryland cases interpreting the meaning of "malice" in the specific context of medical peer reviewers and Section 5–715.[2] The Maryland courts have, however, interpreted the meaning of malice in the closely related context of immunity for municipal corporations and their officers under former Section 5–321(b)(1). In that context, the courts have said that a municipal officer acts with malice if he "intentionally perform[s] an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Davis v. DiPino*, 99 Md.App. 282, 290, 637 A.2d 475 (Md.App.1994) (internal quote omitted), *rev'd on other grounds*, 337 Md. 642, 655 A.2d 401 (1995).

Plaintiff's complaint pleads that Defendant acted with malice as follows:

> Defendant acted wilfully, intentionally and with malice in preparing a peer review report that is replete with blatant misrepresentations, unsupported slurs on the Plaintiff and exaggerations. The Defendant, acting in bad faith and in an unreasonable manner, deliberately and knowingly intended to damage the Plaintiff's professional reputation, as well as his credibility and veracity.

Complaint at ¶ 40. While this bald assertion of malice would be insufficient alone, Plaintiff further alleges as evidence of malice that Defendant (a) violated the Faculty's peer-review procedures and (b) included false statements in his Report.

In support of his claim of procedural violations, Plaintiff alleges that Defendant had several conflicts of interests with Plaintiff and therefore was an inappropriate candidate to review Plaintiff's competency.[3] First, Plaintiff alleges that he treated a former patient of Defendant's who was considering suing Defendant. Plaintiff adds that he was prepared to testify against Defendant in any such suit, and Defendant knew it. Complaint at ¶ 36. Second, while alleging no facts supporting direct competition with Defendant, Plaintiff avers generally that he is an economic threat to all physicians who, like Defendant, are not trained in laparoscopic procedures. Complaint at ¶ 1. Third, Plaintiff alleges that Defendant harbors anti-Polish and anti-Catholic animus as evidenced by verbal and written comments Defendant allegedly made regarding a "large picture of Dr. Ostrzenski meeting the Pope." Complaint at ¶ 39.

In turn, Plaintiff's allegation that Defendant lied in the Report essentially rehashes Plaintiff's allegations of conflict of interest. While Plaintiff baldly asserts that the "report is replete with blatant misrepresentations," the only well-pled allegation of falsehood is his claim that the Report "falsely reported that '[t]hose physicians present ... indicated that there was no professional relationship or conflict of interest[.]'" Complaint at ¶ 26. Plaintiff describes no other misrepresentation nor challenges the truth of the Report's substantive conclusions.

**2.** The Maryland courts have counseled that the term "malice" may have different definitions depending on context. *Thomas v. Annapolis*, 113 Md.App. 440, 456 n. 6, 688 A.2d 448 (1997).

**3.** Plaintiff also alleges that he was not given an opportunity to respond to the Report and that the Report was late. Regarding an opportunity to respond, it appears from Plaintiff's complaint that Defendant wrote the Report, submitted it to the Board and was done with the matter. If the Board failed to allow Plaintiff to reply, that allegation implicates the Board's conduct and not Defendant's. Moreover, Plaintiff makes no attempt to explain how he would have replied had he been given the opportunity to do so. Therefore, the Court is hard pressed to see how Plaintiff was harmed by the lack of an opportunity to respond. Likewise, Plaintiff fails to explain how he was harmed by the Report's untimeliness. More importantly, neither the lack of a response nor the Report's untimeliness helps to establish that Defendant acted with malice in the sense that he had "an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff."

 Under Maryland law, Plaintiff has sufficiently plead malice, albeit only barely so. It is clear that "the mere assertion that an act was done maliciously" is not enough. *Manders v. Brown,* 101 Md.App. 191, 216, 643 A.2d 931 (1994). It is enough, however, to allege that a defendant harbored hostility towards the plaintiff and caused the plaintiff harm. *See Williams v. Prince George's County,* 112 Md.App. 526, 550, 685 A.2d 884 (Md.App.1996); *Manders,* 101 Md.App. at 217, 643 A.2d 931. In *Williams,* the court held that the plaintiff failed to establish malice because he had shown "no expressions of hostility [by] the officers nor any physical harm[.]" *Williams,* 112 Md.App. at 550, 685 A.2d 884. Similarly in *Manders,* the court held that the plaintiff adequately pled malice by alleging that city officials altered a zoning ordinance to satisfy certain powerful constituents and that the change harmed plaintiff's business. *Manders,* 101 Md.App. at 217, 643 A.2d 931.

In this case, Plaintiff has alleged that Defendant harbored animosity against him and wrote a report that caused him injury. In support, Plaintiff offers a factually plausible explanation of why Defendant wished him ill: Plaintiff's role in potential malpractice action, general economic competition, and ethnic animus. Moreover, Plaintiff describes the subsequent disciplinary actions to which the Report led and the harm that those actions caused him, including the denial of medical licenses in other states. While it is a close question, the Court concludes that Plaintiff has adequately pled malice and thus defeated, for the purposes of a motion to dismiss, Defendant's statutory immunity from civil liability pursuant to Section 5–715.

 Plaintiff's allegations, however, do not adequately state a claim for false light. Under Maryland law:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement of Torts (Second) § 652E; *Allen v. Bethlehem Steel Corp.,* 76 Md.App. 642, 648, 547 A.2d 1105 (1988); *see also Hollander v. Lubow,* 277 Md. 47, 53–60, 351 A.2d 421 (1976). The gist of the tort is a publication by the defendant that unreasonably places the plaintiff in a false and offensive light before the public. *Allen,* 76 Md.App. at 648, 547 A.2d 1105. Moreover, "[t]he information published must be false or untrue, at least to the extent that it portrayed the plaintiff in an objectionable light." *Id.*

Plaintiff's single allegation of falsehood— that Defendant misrepresented in the Report that he had no conflicts of interest with Plaintiff—is not even mildly offensive, let alone "highly offensive" as required by Maryland law. Granted, Plaintiff alleges that the Report was "replete" with falsehoods, but that allegation is so devoid of factual support that it deserves no credit. *See United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979). Plaintiff was aware of the Report's contents when he filed his complaint. Presumably, Plaintiff knew better than anyone what was wrong with the Report. That Plaintiff relied on a single mild allegation of falsehood establishes that Plaintiff can prove no set of facts that would satisfy false light's requirement of a highly offensive falsehood.

Therefore, the Court grants Defendant's motion to dismiss (a) Plaintiff's Section 1983 claim because Defendant enjoys absolute quasi-judicial immunity and (b) Plaintiff's false-light claim because Plaintiff has failed to allege any set of facts that could satisfy the elements of that tort. A separate order will be entered.

### · ORDER

In accordance with the accompanying Memorandum Opinion, IT IS this 9th day of April, 1998, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's Motion to Dismiss, BE, and the same hereby IS, GRANTED;

2. Judgment BE, and the same hereby IS, ENTERED in favor of Defendant Mark S. Seigel, M.D., and AGAINST Plaintiff Adam Ostrzenski, M.D., on all claims; and

3. The clerk is directed to mail a copy of this Order and the accompanying Memorandum Opinion to counsel for the parties and CLOSE this case.